IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE DISTRICT OF SOUTH CAROLINA CHARLESTON.SC
CHARLESTON DIVISION

2012 AUG 20 A 9 51

| | | |
|---|---|---|
| First South Bank, | ) | Civil Action No. 9:11-cv-2587-RMG |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| v. | ) | |
| | ) | |
| Bank of the Ozarks, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### I.  Introduction

In this declaratory judgment and breach of contract action, Plaintiff asks the Court to interpret a contract which it entered into with Defendant's predecessor, Woodlands Bank. Specifically, Plaintiff asks the Court to interpret the Participation Certificate and Agreement entered into on February 2, 2008, between Plaintiff and Woodlands Bank (the "Lakeside Participation Agreement"). (Dkt. No. 41-2). The Lakeside Participation Agreement provides the rights and obligations of Plaintiff and Defendant with regard to a loan made to Lakeside Development, LLC, for which Woodlands Bank was the originating lender and Plaintiff was the participating lender. In this action, Plaintiff contends that the Lakeside Participation Agreement requires Defendant to bear all expenses associated with collecting and enforcing the loan. Plaintiff asserts that Defendant has breached the Lakeside Participation Agreement by requiring Plaintiff to bear a portion of these expenses. Accordingly, Plaintiff asks the Court to award Plaintiff damages and to declare that the Lakeside Participation Agreement requires Defendant to bear all expenses going forward. In response, Defendant contends that the Lakeside Participation Agreement requires Plaintiff and Defendant to each bear a portion of the expenses. On May 2, 2012, Plaintiff filed a motion for summary judgment, and Defendant filed a motion

1

for judgment on the pleadings. (Dkt. Nos. 22-23). On June 26, 2012, the Court issued an order denying both motions. (Dkt. No. 28). On August 16, 2012, the Court held a bench trial. The Court now issues these findings of fact and conclusions of law.

## II.    Findings of Fact

### a.    Terms of the Lakeside Participation Agreement

In 2008, Woodlands Bank approached Plaintiff about participating in a loan to Lakeside Development, LLC. Plaintiff agreed to participate in the loan, and on February 2, 2008, Plaintiff entered into the Lakeside Participation Agreement with Woodlands Bank.[1] The Lakeside Participation Agreement is printed on a form prepared by a third-party named Bankers Systems, Inc. The form consists of one page with terms and conditions on the front and back of the page. The front page of the form contains blanks for the date and for the name and address of the participating banks, followed by eight pre-printed paragraphs, each of which has at least one blank to be filled in by the parties using the form. (Dkt. No. 42-2 at 1). The back page of the form contains only pre-printed, boilerplate terms and conditions. (*Id.* at 2). Also, the bottom of the front page has blanks for a representative from each participating bank to sign and a blank for the parties to initial, whereas the back page has only a blank for the parties to initial.

On the front page of the Lakeside Participation Agreement, Woodlands Bank is identified as the "Originating Lender (Seller)," and Plaintiff is identified as the "Participating Lender (Purchaser)." In paragraph 1, Lakeside Development, LLC is identified as the borrower; the date of the loan is listed as February 1, 2008; and the "maximum total Principal" of the loan is listed as $7,150,000.00. Paragraph 3 is entitled "Payments" and provides three options for the order in

---

[1] As discussed further below, Defendant purchased the assets of Woodlands Bank from the Federal Deposit Insurance Corporation ("FDIC") on July 16, 2010. Thus, Defendant is the successor-in-interest to Woodlands Bank for purposes of the Lakeside Participation Agreement.

2

which the two participating banks will receive "Payments."[2]   The second option, Option B, is marked with a typewritten "X".  Under Option B, Purchaser (i.e. the Plaintiff) is to receive 100 percent of Payments *before default* until such time as Purchaser has received its investment plus interest.  Paragraph 3 does not provide for how Payments will be distributed *after default*. Paragraph 4 is entitled "Expenses," and provides as follows:

> 4. EXPENSES.  Seller may at its discretion make additional advances for taxes, insurance premiums and other items deemed necessary by Seller to collect, enforce, or protect the Loan and any Property securing the Loan including, but not limited to, attorneys' fees, court costs and disbursements (Expenses).[3] Purchaser's percentage of Expenses is (check one):
>
> A.  ☐ No Shared Expenses.  Seller will bear all Expenses.
> B.  ☐ Shared Expenses.  _____ percent of Expenses, or if no percentage is indicated, that percentage of Expenses which Purchaser's unreimbursed investment is of the principal amount of the Loan outstanding on the date Expenses are incurred.  All Expenses will be shared in the proportion indicated on the date Expenses are incurred.  Purchaser will pay to Seller on demand Purchaser's share of Expenses.  Seller will remit to Purchaser purchaser's share of Expenses recovered by Seller.

The box next to Option A is marked with a typewritten "X".  Option A of paragraph 4 does not, as shown above, limit its application to before or after default.  Paragraph 6 is entitled "Administrative Fees," and provides as follows:

> 6.  ADMINISTRATIVE FEES.  For the services of Seller in administering the Loan, Purchaser will pay to Seller Administrative Fees as follows (check one):

---

[2] "Payments" are defined to include "principal, interest, and other charges received by Seller with respect to the Loan from whatever source derived including, but not limited to, all sums realized from any endorser, guarantor, or other person liable with respect to the Loan; all sums realized from the exercise by Seller of any rights pursuant to a lien or right of set-off with respect to any deposit balance or other property of the Borrower; any insurance proceeds or casualty awards; and any proceeds from the sale, liquidation, exchange, or substitution of the Property." (Dkt. No. 41-2 at 2).
[3] In this order, the Court uses the term "Expenses" as that term is defined here.  The Court notes that the examples of Expenses identified in the Lakeside Participation Agreement could potentially be incurred by a bank prior to a default, but would more commonly be incurred after a default.

A. ☐ No Administrative Fee. Seller will bear all costs of administering and servicing the Loan.

B. ☐ Administrative Fee of $ _____ payable _____

C. ☐ Administrative Fees of ____ percent per annum of the Purchaser's Share of the outstanding balance of the Loan from time to time.

The box next to Option A is marked with a typewritten "X". Option A of paragraph 6 does not, as shown above, limit its application to before or after default. At the bottom of the first page, Scott Sharp signed on behalf of Woodlands Bank, and Patrick Wright signed on behalf of Plaintiff. Thus, looking only to the front page of the Lakeside Participation Agreement, it appears clear that Plaintiff is not required to pay any "Expenses" or "Administrative Fees," and that Defendant is required to pay all Expenses and Administrative Fees.

The back page of the Lakeside Participation Agreement consists of paragraphs 9 through 23, each of which is, as mentioned above, preprinted and boilerplate. In other words, the back page does not contain any blanks to be filled in by the contracting parties. Only two of the paragraphs on the back page are potentially relevant to this dispute. First, paragraph 12 is entitled "Administration," and subsection C of paragraph 12 provides as follows:

> Participation Agreement. Seller will remit Purchaser's percentage of the Payments and any shared Borrower Fees not later than the close of the tenth business day following receipt of any Payments or Borrower Fees. If shared, Expenses and Administrative Fees will be charged to and payable by Purchaser from time to time as they are incurred or as otherwise agreed. Unless otherwise agreed, such charges will be deducted from the amount of any Payments or Borrower Fees to be remitted to Purchaser from time to time, but will not exceed the total amount to be remitted to Purchaser at any one time. At Seller's option, and upon reasonable notice to Purchaser, Seller may demand full payment of any outstanding Expenses or Administrative Fees due Seller.

By starting the second sentence of this provision with the phrase "If shared," this provision contemplates the possibility that Expenses and Administrative Fees will not be shared, but will

be paid entirely by one party.    However, paragraph 19, which is entitled "Default and Liquidation of Loan," provides as follows:

> 19. DEFAULT AND LIQUIDATION OF LOAN.  Notwithstanding any payment terms to the contrary, in the event of Default, or if Seller in its sole discretion should otherwise accelerate and liquidate the Loan, all Payments collected and received by Seller will be applied ratably as follows:  first, to Expenses; second, to the unpaid principal amount of the Loan in proportion to the respective unpaid investments of Seller and Purchaser in the Loan at the time of Default; and third, to the respective accrued interest and other charges of Seller and Purchaser.  Upon Borrower's Default, all Payments and Borrower Fees received from Borrower, whether designated for repayment of the Loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

By providing that Payments will be applied, ratably, first to Expenses, and second to the unpaid principal amount of the Loan in proportion to the respective unpaid investments of Seller and Purchaser in the Loan at the time of Default, paragraph 19 appears to allow Defendant, after a default, to pay off all "Expenses" before paying Plaintiff.  Thus, paragraph 19 requires both Plaintiff and Defendant to bear a portion of Expenses after default, which is inconsistent with paragraph 4, which provides that Plaintiff will pay no Expenses and Defendant will pay all Expenses.

### b. Testimony Regarding the Negotiation and Execution of the Lakeside Participation Agreement

At trial, the parties presented testimony from Patrick Wright, who represented Plaintiff during the negotiation of the Lakeside Participation Agreement, and Scott Sharp, who represented Woodlands Bank during the negotiation of the Lakeside Participation Agreement. Sharp testified that he was serving as senior vice president of commercial lending at Woodlands Bank during the time that he negotiated and executed the Lakeside Participation Agreement. Sharp testified that he approached Wright about entering into the Lakeside Participation Agreement because Lakeside Development, LLC was seeking a $7,125,000 loan, which was

5

above Woodlands Bank's lending limit.  Sharp testified that Wright provided the form, which was created by third-party Bankers Systems, Inc., which they used for the Lakeside Participation Agreement.  Sharp testified that he remembers going through the provisions on the front page of the Lakeside Participation Agreement with Wright and focusing on the information which was filled out or checked on the front page.  Sharp testified that he recalled Wright telling him that Plaintiff wanted Option A under paragraph 4 – i.e., the option which states: "No Shared Expenses.  Seller will bear all Expenses" – marked.  Sharp testified that he remembers agreeing to all of the information filled out on the front page, which included Option A under paragraph 4.  Sharp testified that he interpreted paragraph 4 as an unqualified requirement that Woodlands Bank bear all Expenses.  Sharp signed the bottom of the front page of the Lakeside Participation Agreement.  Sharp, however, testified that he does not recall reviewing any of the provisions on the back page of the Lakeside Participation Agreement, including paragraph 19.  Sharp did not sign or initial the bottom of the back page of the Lakeside Participation Agreement.

Wright's testimony was largely consistent with Sharp's testimony.  Wright testified that he was serving as executive senior vice president of Plaintiff during the time that he negotiated and executed the Lakeside Participation Agreement.  Wright testified that he remembers Sharp approaching him about the Lakeside Participation Agreement and remembers negotiating the agreement with Sharp.  Wright testified that he specifically remembers negotiating paragraph 4 of the Lakeside Participation Agreement with Sharp and remembers telling Sharp that Plaintiff wanted Option A – i.e., the option which states: "No Shared Expenses.  Seller will bear all Expenses" – marked.  Wright testified that paragraph 4 was an important provision for Plaintiff and that Plaintiff would not have entered into the Lakeside Participation Agreement if Option A of paragraph 4 had not been marked.  Wright testified that he interpreted paragraph 4 as an

6

unqualified requirement that Woodlands Bank bear all Expenses. The Court found the testimony of Sharp and Wright to be credible. The Court also finds that Plaintiff would not have entered into the Lakeside Participation Agreement but for Woodlands Bank's agreement to bear all Expenses. Further, the Court finds that Sharp and Wright, who represented Woodlands Bank and Plaintiff, respectively, during the negotiation and execution of the Lakeside Participation Agreement, intended for paragraph 4 to require Woodlands Bank to bear all Expenses.

### c.  Evidence Regarding Events Occurring After the Negotiation and Execution of the Lakeside Participation Agreement

In September of 2008, Plaintiff and Woodlands Bank executed another Participation Certificate and Agreement for a loan to a different borrower, Paul B. Steadman, Trustee of the Steadman Family Trust UTD May 20, 1988 (the "Steadman Participation Agreement"). (Dkt. No. 35 at 5-6). On December 16, 2009 and June 16, 2010, Plaintiff and Woodlands Bank executed a second and third Participation Certificate and Agreement relative to extensions of the loan to Lakeside Development, LLC. (Dkt. No. 14 at 6-11). All of these Participation Certificates and Agreements were drafted on the same forms as the form used in the Lakeside Participation Agreement and have the same boxes checked in paragraphs 3, 4, and 6 as in the Lakeside Participation Agreement.

At some point in late 2009 or early 2010, the loan related to the Steadman Participation Agreement went into default. In April of 2010, Woodlands Bank recovered certain proceeds relating to the Steadman Participation Agreement. Woodlands Bank then paid Plaintiff its portion of the proceeds, and although Woodlands Bank had incurred certain Expenses, Woodlands Bank did not deduct any Expenses from the proceeds distributed to Plaintiff. At trial, Mr. Phillip Hartman, who was working for Woodlands Bank at the time of this distribution, testified that he did not deduct Expenses from this distribution because he had not read the

7

Steadman Participation Agreement carefully enough and simply made a mistake.  In July of 2010, Woodlands Bank notified Plaintiff that it had received additional proceeds related to the Steadman Participation Agreement and that Woodlands Bank intended to deduct Plaintiff's percentage of the Expenses prior to distributing proceeds to Plaintiff.  In response, Plaintiff took the position which it has taken in this lawsuit – namely, that Defendant was required to pay all Expenses pursuant to paragraph 4 of the participation agreement.  However, in at least one communication from Plaintiff to Woodlands Bank, Plaintiff stated that it expected Woodlands Bank to distribute the proceeds *less Expenses*.

On July 16, 2010, the FDIC was appointed receiver for Woodlands Bank and entered into an agreement with Defendant whereby Defendant assumed the position of Woodlands Bank under the Lakeside and Steadman Participation Agreements.   Around this same time, a representative from Woodlands Bank notified Plaintiff that it was going to distribute the proceeds from the collateral under the Steadman Participation Agreement, but reiterated that Woodlands Bank would deduct Plaintiff's percentage of the Expenses pursuant to paragraph 19 before distributing the proceeds.  While Plaintiff initially disputed Woodlands Bank's position that Plaintiff should be required to pay any Expenses, Plaintiff ultimately accepted the proceeds which had been reduced by a portion of Expenses and did not expressly state that it was accepting the reduced amount under protest.  At trial, Mr. Wright and Mr. Lyerly, both of whom were working for Plaintiff at the time, testified that Plaintiff chose not to continue to dispute the deduction of Expenses because Plaintiff feared that it might not receive any money due to the uncertain financial position of Woodlands Bank, which was in the midst of being taken over by the FDIC, and because the Expenses represented a relatively small amount of money.

In December of 2010, the loan to Lakeside Development, LLC went into default. In and around July of 2011, Defendant took certain actions, and incurred certain Expenses, to enforce and protect the loan to Lakeside Development, LLC and the property securing that loan. During this time period, Plaintiff consistently communicated to Defendant its position that paragraph 4 of the Lakeside Participation Agreement required Defendant to bear all of the Expenses incurred in enforcing and protecting the loan. On the other hand, Defendant consistently took the position that paragraph 19 of the Lakeside Participation Agreement permitted Defendant to pay all Expenses before distributing any proceeds to Plaintiff. Pursuant to its position, Defendant, upon receipt of the proceeds from certain collateral, first paid Expenses in the amount of $81,452.39 from the amount received, and then paid to Plaintiff its percentage share of the remainder of the proceeds based on its percentage investment in the total loan. As a result, Defendant withheld $47,275.78 from Plaintiff which would have otherwise been paid to Plaintiff if Defendant had borne all Expenses.

On September 26, 2011, Plaintiff brought this action to recover the $47,275.78 and the prejudgment interest thereon, as well as Plaintiff's attorneys' fees and costs incurred in prosecuting this action.[4] Plaintiff also seeks a declaration that Plaintiff has no responsibility pursuant to the Lakeside Participation Agreement to pay any of the additional Expenses which have been incurred or which will be incurred by Defendant with regard to the Lakeside Participation Agreement.

---

[4] Paragraph 22 of the Lakeside Participation Agreement provides: "If any lawsuit or proceeding is brought by Seller or Purchaser to enforce the terms of this Agreement, the unsuccessful party will pay the prevailing party all its court costs and reasonable attorneys' fees incurred in bringing or defending such action."

### III.     Conclusions of Law

In this action, the relief sought by Plaintiff requires the Court to interpret a contract. Specifically, the Court must interpret the Lakeside Participation Agreement to determine whether it requires Defendant to bear all Expenses, as argued by Plaintiff, or allows Defendant to pay Expenses out of the proceeds before distributing the proceeds to Plaintiff, as argued by Defendant. Because the Court has diversity jurisdiction over this action, the Court applies South Carolina choice-of-law rules. *See Klaxon Co.* v. *Senator Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941). Under South Carolina's choice-of-law rules, South Carolina law applies to this action. *See Lister* v. *NationsBank of Delaware, N.A.,* 494 S.E.2d 449, 455 (S.C. Ct. App. 1997) (providing that, under South Carolina choice-of-law rules, the law of the state where the contract was made applies); *see also* (Dkt. No. 41-2 at ¶ 23) (provision in the Lakeside Participation Agreement providing that the laws of the state where Seller is located, which is South Carolina, applies); *Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 109 (S.C. Ct. App. 2011) ("Choice of law clauses are generally honored in South Carolina.").

"The main guide in contract interpretation is to ascertain and give legal effect to the intentions of the parties as expressed in the language of the [contract]." *Gilbert v. Miller*, 586 S.E.2d 861, 864 (S.C. Ct. App. 2003). "In ascertaining intent, the court will strive to discover the situation of the parties, along with their purposes at the time the contract was entered." *M & M Group, Inc. v. Holmes*, 666 S.E.2d 262, 266 (S.C. Ct. App. 2008) (internal quotations omitted). Where an agreement is clear on its face and unambiguous, the Court's only function is to interpret its meaning and the intent of the parties as found within the agreement. *Miles v. Miles*, 711 S.E.2d 880, 883 (S.C. 2011). However, if the agreement is ambiguous, "parol and other extrinsic evidence will be admitted to determine the intent of the parties." *Harris v. Ideal*

10

*Solutions, Inc.*, 682 S.E.2d 523, 526 (S.C. Ct. App. 2009) (internal quotations omitted).  Further, in interpreting an ambiguous contract, the Court may consider any applicable rules of construction, as "[t]he purpose of all rules of construction is to ascertain the intention of the parties to the contract."  *Hansen ex rel. Hansen v. United Servs. Auto. Ass'n*, 565 S.E.2d 114, 116 (S.C. Ct. App. 2002).  "An agreement is ambiguous if it is susceptible to more than one interpretation or its meaning is unclear."  *Miles*, 711 S.E.2d at 883.

In the case *sub judice*, the Court has already ruled that the contract at issue – the Lakeside Participation Agreement – is ambiguous.  (*See* Dkt. No. 28 (order denying motion for summary judgment and motion for judgment on the pleadings on the basis that the contract is ambiguous)).  While paragraph 4 plainly and without qualification states that Defendant is to bear all Expenses, paragraph 19 appears to permit Defendant, after default, to pay Expenses out of the proceeds that it receives prior to distributing the proceeds to itself or Plaintiff.  The Court cannot reconcile these two provisions.  Defendant argues that the introductory clause to paragraph 19 – "Notwithstanding any payment terms to the contrary" – renders paragraph 4 unenforceable after a default by the borrower and, accordingly, renders the contract unambiguous.  The Court does not agree.  Further, the Court finds that the arguments and evidence presented at trial demonstrate that both Plaintiff and Defendant hold a good faith belief that their respective interpretations of the contract – which are diametrically opposed with regard to treatment of Expenses – are correct.  Perhaps the conflicting good faith beliefs of the parties is the strongest evidence that the contract is, in fact, ambiguous with regard to which party must bear Expenses after a default.

The parties assert that, since the Court finds the contract to be ambiguous, the Court should look to parol and other extrinsic evidence to determine the intent of the parties.  The

Court agrees. *See Harris*, 682 S.E.2d at 526 (holding that, where an agreement is ambiguous, parol and other extrinsic evidence should be admitted to determine the intent of the parties).[5] First, the Court will address the evidence presented by the parties regarding their course of conduct in connection with the Steadman Participation Agreement. While both Plaintiff and Defendant argued that this evidence supports their respective positions in this litigation, the Court did not find this evidence to be probative. The Court found the testimony of Hartman regarding Woodlands Bank's reason for not deducting Expenses in April of 2010 to be credible, and the Court found the testimony of Wright and Lyerly regarding Plaintiff's reason for accepting the proceeds reduced by Expenses in July of 2010 to be credible. In sum, the Court found that, after the execution of the Lakeside Participation Agreement, Plaintiff has consistently held and expressed a good faith belief that Woodlands Bank (and subsequently Defendant) should bear all Expenses pursuant to paragraph 4, while Woodlands Bank and Defendant have consistently held and expressed a good faith belief that Plaintiff should bear a portion of the Expenses pursuant to paragraph 19. Thus, the Court finds that Plaintiff and Defendant essentially maintained the same positions regarding Expenses throughout their course of conduct with the Steadman Participation Agreement that Plaintiff and Defendant now maintain in this

---

[5] In its answer, Defendant asserted affirmative defenses pursuant to the *D'Oench Duhme* doctrine, *see D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447 (1942), and 12 U.S.C. § 1823(e). (Dkt. No. 18). These defenses, if asserted by Defendant, arguably bar the parties from presenting any parol or other extrinsic evidence regarding the correct interpretation of the contract. *See Fed. Fin. Co. v. Hall*, 108 F.3d 46, 49-50 (4th Cir. 1997) (holding that 12 U.S.C. § 1823(e) and the common law rule from *D'Oench, Duhme* protect the FDIC and its assignees from the use of certain extrinsic evidence by another party in a contract dispute); *F.D.I.C. v. Zook Bros. Constr. Co.*, 973 F.2d 1448, 1451 (9th Cir. 1992) ("We think it is beyond question that § 1823(e) and *D'Oench* allow the FDIC to rely on official bank records to the exclusion of extrinsic matters."). However, at trial, Defendant's counsel expressly stated that Defendant waived both of these defenses in this case.

litigation with regard to the Lakeside Participation Agreement. Thus, the Court does not find this extrinsic evidence probative.

The Court did, however, find the testimony of Sharp and Wright, the two individuals who actually negotiated and signed the Lakeside Participation Agreement, to be quite probative regarding the parties' intent. Both Sharp and Wright testified that, during the negotiation of the Lakeside Participation Agreement, Wright insisted that Option A of paragraph 4 – i.e., the option which states: "No Shared Expenses. Seller will bear all Expenses" – be marked, and both Sharp and Wright testified that they interpreted Option A of paragraph 4 as an unqualified requirement that Defendant bear all Expenses. Further, Sharp testified that he does not even recall reading paragraph 19, which is the sole paragraph on which Defendant relies. Thus, Sharp, the individual who negotiated and executed the Lakeside Participation Agreement on behalf of Defendant's predecessor, did not intend for Expenses to be treated differently after a default. The Court found the testimony of Sharp to be largely consistent with the testimony of Wright, and the Court found both witnesses to be credible. While Defendant presented multiple witnesses at trial who testified that they interpret the Lakeside Participation Agreement as requiring Plaintiff to pay a portion of the Expenses pursuant to paragraph 19, none of these witnesses were involved in the negotiation of the agreement with Plaintiff at the time the agreement was entered. Thus, the Court finds that the testimony of Sharp and Wright is the most probative evidence of the intent of the parties *at the time the contract was entered. See M & M Group, Inc.*, 666 S.E.2d at 266 ("In ascertaining intent, the court will strive to discover the situation of the parties, along with their purposes *at the time the contract was entered.*") (Emphasis added). Based on this testimony, the Court finds that both parties to the Lakeside Participation Agreement intended for Defendant to bear all Expenses – both before and after

13

default – pursuant to paragraph 4.  Accordingly, the Court interprets the Lakeside Participation Agreement consistent with this intent.

Further, even if the Court found the intent of the parties to be ambiguous, the Court would resort to rules of construction and would reach the same result.  It is well-settled law that "[w]here part of a contract is written or typed and part is printed, and the written or typed and the printed parts are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the whole, the words in writing or typing will control."  17A Am. Jur.2d *Contracts* § 386 (2012).  This rule is based on sound reasoning.  As explained in American Jurisprudence, "[t]he reason greater effect is given to the written or typed part of an agreement than to the printed part of it, if they are inconsistent, is that the written or typed words are the immediate language and terms selected by the parties themselves for the expression of their meaning, while the printed form is intended for general use without reference to particular objects and aims."  *Id.*  This rule has been adopted by nearly every jurisdiction, including South Carolina.  *See Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 879 (S.C. Ct. App. 1997) (holding that, if there is an inconsistency between printed and handwritten provisions in a contract, the handwritten provision prevails) (citing 3 Arthur L. Corbin, *Corbin on Contracts* § 548, at 181-83 (1960)); *B. Elliott (Canada) Ltd. v. John T. Clark & Son of Maryland, Inc.*, 704 F.2d 1305, 1308 (4th Cir. 1983) ("According to general rules of contract interpretation, separately negotiated or added terms will prevail over the conflicting printed part of a contract."); *see also* Restatement (2d), Contracts § 203 (stating that "separately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated"); *cf.* S.C. Code § 36-3-114 ("If an *instrument* contains contradictory terms, typewritten terms prevail over printed terms, handwritten terms prevail over both, and words prevail over numbers.") (Emphasis added).  In

14

the Lakeside Participation Agreement, Option A of paragraph 4 was marked with a typewritten "X," whereas paragraph 19 is a printed provision. Thus, the Court rules, in the alternative, that the Lakeside Participation Agreement requires Defendant to bear all Expenses – both before and after default – pursuant to the rules of construction.

## IV.    Conclusion

For the foregoing reasons, the Court interprets the Lakeside Participation Agreement as requiring Defendant to pay all Expenses, both before and after default. Accordingly, it is hereby ORDERED:

1.  That the Court finds for Plaintiff on its breach of contract cause of action and awards Plaintiff actual damages in the amount of $47,275.78, plus prejudgment interest;

2.  That the Court finds for Plaintiff on its declaratory judgment cause of action and declares that the meaning of the Lakeside Participation Agreement is as explained in this order; the Court instructs Defendant to bear all Expenses which have been incurred or which are incurred in the future under the Lakeside Participation Agreement;

3.  That, because the Lakeside Participation Agreement provides for the prevailing party to recover its court costs and reasonable attorneys' fees, Plaintiff is entitled to recovery of its court costs and reasonable attorneys' fees[6];

4.  That judgment is entered in favor of Plaintiff and that this case, upon the award of attorney's fees, will be dismissed with prejudice.

---

[6] The Court instructs Plaintiff to file a motion within ten days of this Order setting forth its court costs and attorneys' fees with proof thereof.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

August 20, 2012
Charleston, South Carolina